[No. 26384-0-II.   Division Two.   July 13, 2001.]

WASHINGTON FEDERATION OF STATE EMPLOYEES, ET AL.,
*Appellants*, v. THE STATE OF WASHINGTON,
*Respondent.*

*Edward E. Younglove III* (of *Parr & Younglove, P.L.L.C.*) and *Martin S. Garfinkel* (of *Frank Rosen Freed Garfinkel & Roberts, L.L.P.*), for appellants.

*Christine O. Gregoire, Attorney General,* and *Jeff B. Kray, Assistant,* for respondent.

HUNT, A.C.J. — The Washington Federation of State Employees (WFSE)[1] appeals the trial court's summary judgment dismissal of its action against the State seeking a declaratory judgment that the Public Employees Retirement System Plan 1 (PERS I) is a trust, which it alleged the State administered improperly. Finding no abuse of discretion, we affirm.

## FACTS

In 1947, the Legislature created PERS I,[2] establishing a retirement system for state employees who became members before October 1, 1977. LAWS OF 1977, Ex. Sess., ch.

---

[1] Three individual plaintiffs are retired PERS I members. The Washington Federation of State Employees and the other organization plaintiffs have members who participate in PERS I. For ease of reference, we refer to the plaintiffs collectively as WFSE.

[2] Originally, the name was "State Employees' Retirement System." LAWS OF 1947, ch. 274.

295.[3] PERS I members may receive a pension "equal to two percent of his or her average final compensation for each service credit year or fraction of a service credit year of membership service." RCW 41.40.185(2). PERS I members may retire after 30 years of eligible service, at age 60 with five years of service, or at age 55 after 25 years of service. RCW 41.40.180. Members contribute six percent of their "total compensation earnable." RCW 41.40.330(1). Employers contribute seven and one-half percent of a member's total earnable compensation. RCW 41.40.330(3).[4]

Between 1973 and 1995, the Legislature authorized retirement system officials to grant cost of living adjustments (COLAs) to PERS I retirees. LAWS OF 1973, 1st Ex. Sess., ch. 190, § 4 and § 11, *repealed by* LAWS OF 1995, ch. 345, § 11. The State's failure to pay COLAs from 1981 to 1995 was the subject of *Retired Public Employees Council v. State*, 104 Wn. App. 147, 16 P.3d 65 (2001). In that case, we held that because PERS I is not a trust, the three-year statute of limitations barred the action.

Here, WFSE sued the State, seeking declaratory relief and alleging that PERS I members had not received "the intended benefits from the investment returns . . . either in the form of sufficiently and timely reduced employee contributions" or increased retirement benefits. Clerk's Papers at 1243. The trial court granted the State's motion for summary judgment and dismissed the amended complaint for breach of contract, breach of trust, and unjust enrichment. The trial court ruled:

> I don't know whether the matter has significance in some other context, but in the context of this case, the question of whether or not PERS Plan I is a trust is not a justiciable issue. . . . [Whether PERS I decisions are based upon inad-

---

[3] Those state employees joining the system after on or after October 1, 1977, participate in PERS II, which was established in Laws of 1977, Ex. Sess., ch. 295. A third plan called PERS III is optionally available to state employees beginning March 1, 2002. LAWS OF 2000, ch. 247.

[4] Based on figures from the state actuary, the plaintiff employees here received or will receive in benefits 1,432 percent to 6,529 percent more than their total contributions to the system.

equate and insufficient information] is an issue for the legislature as far as this Court can see.

Report of Proceedings (June 30, 2000); Clerk's Papers at 27, 28. The trial court denied WFSE's motion for reconsideration.

## ANALYSIS

### I. STANDARD OF REVIEW

■ WFSE contends that the standard of review is the same as for other summary judgment cases. We disagree. The appropriate standard of review is whether the trial court abused its discretion in declining to grant declaratory relief to WFSE:

> In declaratory judgment actions, appellate review may ensue in two situations. First, under the Uniform Declaratory Judgments Act, trial courts have discretion to determine whether to entertain a declaratory judgment action. Accordingly, an appellate court may be called upon to determine whether the trial court erroneously exercised its discretion *either to* consider or refuse to consider such an action. Second, in cases in which a court decides the declaratory judgment action on its merits, an appellate court may be called upon to determine the propriety of the lower court's grant or denial of declaratory relief.

*Nollette v. Christianson*, 115 Wn.2d 594, 599, 800 P.2d 359 (1990) (emphasis added).

Here, the trial court refused to issue a declaratory judgment on the merits. Nonetheless, under *Nollette*, we review the trial court's refusal to entertain WFSE's declaratory judgment action for abuse of discretion. We find none.

### II. NO JUSTICIABLE CONTROVERSY

■ The Supreme Court has outlined the requirements for determining whether there is a justiciable controversy warranting declaratory relief:

For purposes of declaratory relief, a justiciable controversy is

"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 917, 949 P.2d 1291 (1997) (quoting *Nollette*, 115 Wn.2d at 599 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973))).

■ In granting summary judgment and dismissing WFSE's amended complaint with prejudice, the trial court ruled:

Having considered the oral argument of counsel and the above-listed documents, and having determined that there is no genuine issue as to any material fact, and because the court finds that no justiciable controversy is presented regarding the Plaintiffs' requested declaratory relief, the court does not reach the issue of whether PERS 1 is a trust and that the State is entitled to judgment as a matter of law.

Clerk's Papers at 7. We agree. The trial court did not abuse its discretion in declining to consider WFSE's request to declare PERS I a trust.

The Supreme Court has held that

"PERS I is a defined benefit plan. Statutory benefits are not proportional to contributions employees pay into the system. Employer contributions must be increased to whatever level becomes necessary to fund statutorily defined benefits. Therefore, all risk of a shortfall rests on state and local government employers and ultimately, on taxpayers."

*Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 71, 847 P.2d 440 (1993) (quoting Reply Br. of Appellants at 25).[5]

---

[5] The Legislature recently recognized the difference between a defined benefit plan and a defined contribution plan when they enacted PERS III in 2000. Under a defined benefit plan such as PERS I, the " 'employee, upon retirement, is entitled

Moreover, the Supreme Court has "already rejected a characterization of the PERS I fund as a trust." *Bowles*, 121 Wn.2d at 79 (citing *City of Marysville v. State*, 101 Wn.2d 50, 676 P.2d 989 (1984)). We cited *Bowles* with approval in a recent decision:

> The premise underlying these arguments is that PERS I is a trust. In *Bowles*, the Supreme Court expressly "rejected a characterization of the PERS I fund as a trust." RPEC claims that *Bowles* is wrong or distinguishable, but its claims are unpersuasive. PERS I is not a trust for present purposes; DRS was not a trustee; and the statute of limitations for a breach of trust is irrelevant.

*Retired Pub. Employees Council*, 104 Wn. App. at 151 (footnote omitted).

Because PERS I is a defined benefit plan and not an express trust, the trial court did not abuse its discretion in denying declaratory relief. *Nollette*, 115 Wn.2d at 599.

### III. PROPER RECOURSE IS TO LEGISLATURE

We agree with the trial court that WFSE's claim—that the statutory contribution rate for PERS I members results in "[d]isproportionate employee contribution requirements" (Br. of Appellant at 28)—belongs in the Legislature, not the courts. WFSE's other claims are also

---

to a fixed periodic payment.' " *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999) (quoting *Comm'r of Internal Revenue v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 154, 113 S. Ct. 2006, 124 L. Ed. 2d 71 (1993)). If the defined benefit plan is "overfunded, the employer may reduce or suspend his contributions." *Hughes Aircraft*, 525 U.S. at 440.

In contrast to PERS I, which is a defined benefit plan, the Legislature recently created PERS III, a defined contribution plan, where a separate account is established for each member, and the member receives his or her contributions and the investment returns on them, rather than a predetermined level of retirement benefits. LAWS OF 2000, ch. 247. PERS III consists of two separate elements: "(a) A defined benefit portion covered under this subchapter [RCW 41.40.780-.850]; and (b) a defined contribution portion covered under chapter 41.34 RCW." RCW 41.40.780(2). In RCW 41.34.120, the Legislature specifically provided that a trust relationship is established concerning the defined contribution portion of PERS III: "All moneys in members' accounts, all property and rights purchased therewith, and all income attributable thereto, *shall be held in trust* by the state investment board, as set forth under RCW 43.33A.030, *for the exclusive benefit of the members* and their beneficiaries." (Emphasis added.)

matters for legislative, not judicial, action—the lack of an independent trustee, a critical need for a "[r]eview and clarification of statutory and fiduciary duties," and possible problems with the Internal Revenue Service if a trust is not declared. Br. of Appellant at 40. The courts have repeatedly said we will not substitute our judgment for the Legislature's with respect to the structure of public retirement plans. *See, e.g., Wash. State Pub. Employees' Bd. v. Cook*, 88 Wn.2d 200, 559 P.2d 991 (1977):

> We believe the legislature has the authority under its police power to establish a retirement system for public employees . . . . The role of this court does not encompass a duty on our part to review the wisdom of the legislative act. Indeed, we must be cautious lest we substitute our judicial judgment for the legislative judgment.

*Cook*, 88 Wn.2d at 206 (citations omitted).[6]

We hold that the trial court did not abuse its discretion in declining to issue a declaratory judgment and in dismissing the plaintiffs' action. Affirmed.

SEINFELD and BRIDGEWATER, JJ., concur.

---

[6] *See also City of Moses Lake v. Grant County*, 39 Wn. App. 256, 263, 693 P.2d 140 (1984) (citing *State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 580, 399 P.2d 8 (1965)).